*Twenty-sixth Judicial District.*

In the Court of Common Pleas of Schuylkill County.

## ASBURY F. MORTIMER *v.* BARTHOLOMEW O'REAGAN.

By virtue of the provisions of the act of assembly of 20 February, 1867, the alienee of the landlord may institute proceedings under the landlord and tenants act of December 14, 1863, to recover possession of the demised premises made by the landlord, (the original lessor.) To do this attornment in this state is not necessary. By the sale of the demised premises to the grantee, and assignment of the lease to him, the law *infers* the consent of the tenant, and the land with the lease, and all the rights of the landlord, pass to the grantee by operation of law, and the grantee is within the provisions of the act of 6 March 1872, as to all the rights and privileges of the original lessor under the lease. Tilford *v.* Fleming, 17 P. F. S. 300, followed.

Certiorari.

Opinion delivered April 7, 1873, by

WALKER, J. This was a proceeding before a justice of the peace, under the act of the 14th of December, 1863, (P. L., 1125, Purdon's Dig., vol. 2, p. 883, Pl. 20, and the supplement of 1867 and 1872), to obtain possession of certain demised premises.

The complaint sets forth that the plaintiff is the owner of a store and dwelling house, with the appurtenances, and a lot of ground, situate in Port Carbon, Schuylkill county, and that he derived the title from Henry C. Gibson by deed dated November 1, 1869 ; that on February 15, 1869, the said Henry C. Gibson, being in possession, demised the premises in dispute to Bartholomew O'Reagan, the defendant, at the annual rent of $250 for one year and one and one-half months, and from year to year thereafter ; that the lease has terminated, and that he, the plaintiff, is desirous to have and repossess the premises demised, and gave on December 29, 1871, three months' notice to the defendant to deliver up possession of the premises, which the defendant has refused to do.

The proceedings were instituted on May 20, 1872, and the justice, after hearing the parties, finds the complaint just and true in all particulars, and enters judgment against the defendant that he deliver the premises to the plaintiff, and gave judgment for $100 damages.

The defendant has, therefore, removed these proceedings into this court by *certiorari*.

At one time it was supposed that the act of 1863 applied only to landlords who had demised premises to tenants, and that the alienee of such landlord, though owner of the premises, could not proceed to dis-

possess the tenant under the provisions of that act, for to render the grant of a rent effectual the common law required the consent of the tenant, and *this consent was called attornment;* 4 Kent, 490.

On February 20, 1867 (Purdon's Dig., vol. 2, p. 883, Pl. 21), a supplement to the act of 1863, relative to landlords and tenants, was passed by the legislature, construing the act to apply to cases in which the owner or owners of the demised premises had acquired title thereto by descent or purchase from the original lessor or lessors. This supplement was intended to place the grantee of lands in the same position as the grantor was at the time of the sale in respect to the lease and the tenant.

The construction the supreme court have put upon the act of 1863, in Telford *v.* Fleming, 14 P. F. S. 300, rendered the passage of the act of 1867, in this respect, unnecessary, for they held "That the statute of 4 Anne C., 16, § 9, making all grants and conveyances of the remainder and reversion good and effectual, without *attornment of the tenant,* was in force, in Pennsylvania ; Roberts' Dig. 45. (See the report of the judges of the supreme court to the legislature in 1808 as to what English statutes are in force in this state ; 3 Binney, 625.)

Judge Agnew, in Telford *v.* Fleming, says : "To prevent difficulty, however, the act of February 20, 1867, authorizes the owner of the premises who has acquired title by descent or purchase from the original lessor, to proceed under the act of December 14, 1863, and the act of April 11, 1866, its supplement."

But the act of March 6, 1872 (P. L., p. 22, Purdon's Dig., vol. 2, p. 883), declares that it shall be unlawful to commence or prosecute any proceedings to obtain possession of any lands or tenements under the provisions of the act of December 14, 1863, entitled "An act relative to landlords and tenants, unless such proceedings shall be founded upon a written lease or contract in writing, or by a parol agreement, in and by which the relation of landlord and tenant is established between the parties, and a certain rent reserved."

The complaint and transcript of the justice, as exhibited, show that this cause is embraced within the provisions of the acts of 1863 and 1867, and the judgment of the justice must be affirmed, unless the act of March 6, 1872, exempts it from the operation of the above-mentioned act of assembly.

The question here is, Was there a written or parol lease of the premises establishing the relationship of landlord and tenant between the parties, with rent reserved ?

We must look to the proceedings to ascertain these facts.

There is some difficulty in determining whether there was a letting by Mortimer from the words of the complaint, which are : "And the said Asbury F. Mortimer then agreed that the said Bartholomew O'Reagan might continue to occupy the said premises from year to year

at the annual rent of $90 ; " for it is argued that there is no averment that this was accepted by O'Reagan, and therefore it could not be a leasing, so as to establish the relation of landlord and tenant. The language does not satisfactorily show a leasing of the premises in the sense required by the statute, for if O'Reagan claimed by another title, connected with his lessor's title (8 P. F. S., 137), he would not acknowledge the ownership of Mortimer, and the requirements of the act would not apply.

But this difficulty is obviated by the first part of the complaint, which clearly and distinctly sets forth that the premises were demised by Henry C. Gibson to Bartholomew O'Reagan, at a rent reserved, and for a stated period, thus establishing the relationship of landlord and tenant between Gibson and O'Reagan. So it is immaterial whether O'Reagan accepted the new lease from Mortimer, for the old lease of Gibson fixes his tenancy and binds him. The tenant cannot dispute the title upon which he entered ; Holt _v._ Martin, 1 P. F. S., 499 ; Bedford _v._ Kelly, 11 P. F. S., 491. Thus attornment follows assignment of the landlord by _operation of law_, and the consent of the tenant is unnecessary. The law infers consent, per Allison, C. J., 7 Phila., 301.

Under the act of 1867, and the decision of the supreme court, in Telford _v._ Fleming, the _relationship_ of landlord passes to the alienee of lands without attornment, and the status of Mortimer is that of Gibson, and, as the remedies are purely civil, this act should be liberally interpreted. Snyder _v._ Confrey, 4 P. F. S., 90.

The record in this case shows Gibson's possession of the premises, a demise by him to O'Reagan for a certain term, with rent reserved, and notice given of plaintiff's desire to repossess the premises. These are the essentials to sustain the judgment. McGinnis _v._ Vernon, 17 P. F. S., 149 ; Givens _v._ Miller, 12 P. F. S., 133.

There is no doubt that Gibson (had he instituted these proceedings before he sold), as landlord, with rent reserved, could recover against O'Reagan, his tenant, under the facts presented. And as Mortimer (under the act of 1867) stands in the same relation to the defendant as Gibson did to the defendant, he is, we think, clearly within the provisions of the act of 1872, requiring a lease, with rent reserved, and must also recover.

Exceptions dismissed and judgment affirmed.

_Lin Bartholomew_, Esq., for plaintiff; _John W. Ryan_, Esq., for defendant.